PAINE, WEBBER, JACKSON & CURTIS, INC., Plaintiff-Appellee, *v.* ERIC H. RONGREN, Defendant-Appellant.

First District (4th Division)   No. 83—2361

Opinion filed August 23, 1984.

Eric H. Rongren, of Glen Ellyn, for appellant, *pro se.*

Cantwell, Smith & Van Daele, of Chicago (Peter A. Cantwell and Andrew V. DePaul, of counsel), for appellee.

PRESIDING JUSTICE LINN delivered the opinion of the court:
Defendant investor appeals from the trial court's entry of a foreign judgment in the amount of $1,790.63, plus interest and costs, in favor of plaintiff investment firm based on an award by the arbitration board of the New York Stock Exchange arising from defendant's breach of a margin contract. The claim was arbitrated pursuant to a predispute arbitration provision in the customer's agreement.

On appeal, defendant alleges he was denied due process and that the New York court lacked personal jurisdiction over him and subject matter jurisdiction over the claim, which he asserts arises under the Federal securities laws.

We affirm the decision of the trial court.

FACTS
In 1972, defendant investor, Eric Rongren, entered into a cus-

tomer's agreement with plaintiff investment firm, Paine, Webber, Jackson & Curtis, Inc. (Paine Webber), for the opening of a securities trading account. The margin contract contained a predispute arbitration provision which provided, under paragraph 14, that:

> "Any controversy between us arising out of, or relating to this contract or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of either the American Arbitration Association, or the New York Stock Exchange, as I may elect. I authorize you, if I do not make such election by registered mail addressed to you at your main office within fifteen (15) days after receipt of notification from you requesting such election, to make such election in my behalf. Any arbitration hereunder shall be before at least three (3) arbitrators or a majority of them, shall be final, and judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction."

In December 1978, defendant placed an order with plaintiff's broker agent, to sell short a security. Defendant later claimed he was induced to effect this sale by plaintiff's broker having misrepresented certain investment stop figures that appeared in plaintiff's published advisory letter. Defendant informed plaintiff in a letter sent to the operations manager at Paine Webber that no sale order would have been "solicited successfully had the correct information been supplied." In consequence of this transaction, a dispute arose between the parties, and in a letter dated March 27, 1979, plaintiff notified defendant that it sought arbitration of the dispute pursuant to paragraph 14 of the customer's agreement. Plaintiff explained its request for arbitration as follows:

> "Your statement that our Chicago office willfully violated Illinois law is the matter of dispute here and the reason for my request for arbitration to resolve this matter."

Defendant failed to elect a forum, and, pursuant to paragraph 14 of the customer's agreement, plaintiff initiated arbitration proceedings before the arbitration board of the New York Stock Exchange. Defendant did not participate in the arbitration nor did he at any time apply for a stay of arbitration in accordance with the appropriate provisions of the New York Arbitration Act.

In January 1980, plaintiff won an arbitration award in the sum of $1,790.63. Defendant did not move to vacate the award, and thereafter plaintiff applied to the New York Supreme Court for an order confirming the award of the arbitrators. In its order dated August 8, 1980, the New York Supreme Court, noting proof of due service and defendant's

failure to answer or appear in opposition thereto, confirmed the arbitration award and ordered judgment in favor of plaintiff for the sum of $1,882.33, the sum of the award plus interest and costs.

On July 9, 1981, Paine Webber filed a petition for registration of foreign judgment (Ill. Rev. Stat. 1981, ch. 110, par. 12—602) in the circuit court of Cook County, Illinois. A certified copy of the petition together with a summons was served on defendant. Defendant filed an appearance, answer, and jury demand in the Cook County proceedings in August 1981. In his answer, defendant stated that he had made protest to Paine Webber concerning the "misrepresentations made by broker" that induced him to enter the December 18, 1978, short sale order. Defendant raised as his defense the Illinois Statute of Frauds (Ill. Rev. Stat. 1981, ch. 26, par. 8—319), claiming that the "contract was not enforceable" due to lack of a written confirmation of sale. At a hearing held in October 1981, defendant's jury demand was denied.

Thereafter, pursuant to sections 12—606 and 12—607 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, pars. 12—606, 12—607), a levy was made on defendant's residence for satisfaction of the judgment, and plaintiff arranged for a sheriff's sale of defendant's home. Prior to the date fixed for the sale, defendant moved to stay execution. A hearing was held on his motion in July 1983, before the Honorable Alfred Teton. At this hearing, defendant raised two issues. He protested that no hearing had been held on his opposition to the registration of the foreign judgment. He also asserted that the New York court did not have jurisdiction to confirm the arbitration award. The trial court, finding that a proper hearing on the petition and defendant's opposition thereto had not been held, granted defendant's motion for a stay of the sale, granted defendant leave to file an amended answer to the petition to register the foreign judgment, and set the matter for hearing.

Hearings were held on August 23 and September 19, 1984. The reports of these proceedings were not made part of the record on appeal. Based on these hearings, the trial court entered an order finding that (1) defendant had failed to introduce any evidence that would indicate that the arbitration clause contained within the customer agreement was void, and (2) defendant had failed to present any evidence indicating that the New York judgment confirming the arbitration award was void for lack of personal or subject matter jurisdiction. So finding, the trial court ordered that the judgment entered by the New York Supreme Court be confirmed and entered it as a final judgment in favor of plaintiff. It is from this order defendant now appeals.

Opinion

■■ This appeal is from the trial court's order granting plaintiff's petition to register a foreign judgment pursuant to the Uniform Enforcement of Foreign Judgments Act. (Ill. Rev. Stat. 1981, ch. 110, pars. 12–601 through 12–617.) The purpose of the Act is to implement the full faith and credit clause of the Federal Constitution and to facilitate interstate enforcement of judgments in any jurisdiction where the party against whom a foreign judgment has been rendered is found. (*Ayers Asphalt Paving, Inc. v. Allen Rose Cement & Construction Co.* (1982), 109 Ill. App. 3d 520, 440 N.E.2d 907.) A foreign judgment is not subject to collateral attack in an Illinois court except for the defense of fraud in the procurement of the judgment or lack of jurisdiction in the rendering court. *Thompson v. Safeway Enterprises, Inc.* (1978), 67 Ill. App. 3d 914, 385 N.E.2d 702.

Defendant collaterally attacks the New York judgment on the grounds that the New York Supreme Court lacked personal jurisdiction over him and subject matter jurisdiction over the claim. Defendant also directly attacks the judgment of the trial court, claiming that he was denied due process by not being allowed the opportunity to present certain material facts from the arbitration proceedings file at trial. All of the issues raised by defendant on appeal are therefore issues of fact.

We note initially that defendant has failed to include in the record on appeal a report of the proceedings of the hearings held on August 23, 1983, and September 19, 1983, those hearings pursuant to which the trial court issued the order from which defendant now appeals. The only report of proceedings included in the record on appeal is that of the hearing held before Judge Teton on July 18, 1983. The record shows that the July 18, 1983, hearing dealt with defendant's motion to stay the sale of his home and not with the merits of plaintiff's petition to register the foreign judgment. Judge Teton clearly stated in his memorandum opinion dated July 21, 1983, following the July 18, 1983, hearing, that:

> "It is my view that no hearing having been held, to set aside the registration of the foreign judgment on the basis of the Defendant's motions would be to deny Plaintiff its day in Court. Both parties are entitled to, and should have, an appropriate hearing.
>
> It is therefore ordered that the registered judgment has not become a final judgment; that a hearing on the opposition to the registration shall be held; that the levy under the registered judgment shall remain in force; that no sale shall be made under that levy unless and until a final judgment is entered."

The findings of this memorandum opinion were formalized in an order

entered July 22, 1983, in which defendant was granted leave to amend his response to plaintiff's petition to register the New York judgment.

Thereafter, on July 26, 1983, defendant filed an amended answer to plaintiffs' petition to register a foreign judgment pursuant to the order issued by Judge Teton. Hearings on plaintiffs' petition and defendant's opposition thereto were subsequently held, pursuant to which a final order was entered by Judge Teton on September 19, 1983. It is the evidence presented at these hearings of which the record is completely devoid.

■ In the absence of a report of the proceedings, the issues raised for which evidence at trial would be necessary to the determination of the appellate court are not subject to review. (*Abbey Plumbing & Heating, Inc. v. Brown* (1977), 47 Ill. App. 3d 719, 365 N.E.2d 115.) The burden is on the appellant to present a complete record on appeal, and any doubt arising from the incompleteness of the record in its presentation of facts will be resolved against the appellant; however, failure to present a report of proceedings does not require automatic dismissal or affirmance where issues can be resolved on the record as it stands. *Venturini v. Affatato* (1980), 84 Ill. App. 3d 547, 405 N.E.2d 1093.

■ In addition to this burden of proof and the automatic factual resolution against him stemming from the incompleteness of the record, defendant here must rebut a strong legal presumption that underlies questioning the jurisdiction of the New York Supreme Court. For, where a judgment has been rendered by a court of general jurisdiction, there is a strong legal presumption that the court had jurisdiction to render the judgment and that its proceedings conformed to the law of the rendering State. (*Evans v. Advance Schools, Inc.* (1979), 70 Ill. App. 3d 947, 388 N.E.2d 1003.) Where, as here, the foreign decree is silent as to its jurisdiction over the defendant, this legal presumption attaches, and defendant, by certain and positive averments, must negate every fact from which jurisdiction of the rendering court could arise. *Evans v. Advance Schools, Inc.* (1979), 70 Ill. App. 3d 947, 388 N.E.2d 1003.

We must therefore determine whether, by submission of this incomplete record, defendant has presented enough facts on each of the issues raised to render them subject to review by this court; and, if not, whether absent a proper record, the judgment appealed from must be affirmed.

Defendant's first contention is that the New York Supreme Court lacked jurisdiction over his person. Defendant bases this contention on the theory of "minimum contacts." (*International Shoe Co. v. State of Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154.) Defend-

ant argues that the execution of a customer's agreement in which he agreed to elect arbitration either before the American Arbitration Association or the arbitration committee of the New York Stock Exchange conferred no privilege upon him such as to satisfy the minimum contacts doctrine. Plaintiff, on the other hand, citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lecopulos* (2d Cir. 1977), 553 F.2d 842, asserts that the execution of the customer's agreement satisfied the due process requirement of engaging in purposeful activity within the forum and conferred personal jurisdiction over defendant.

■ A copy of the customer's agreement has been made part of the record on appeal, thereby providing us with a sufficient factual basis upon which to decide the issue of personal jurisdiction. In light of the plain language in the agreement, and the undisputed fact that defendant signed said agreement, defendant's consent to arbitrate in New York is a consent to the personal jurisdiction of the courts in New York. (*Intermeat, Inc. v. American Poultry, Inc.* (2d Cir. 1978), 575 F.2d 1017.) While it is arguable that defendant had the option to elect the American Arbitration Association rather than the New York Stock Exchange committee, he failed to exercise that option, and the election was properly made by plaintiff. By not exercising his right to elect, defendant impliedly consented to plaintiff's election and, correspondingly, to the New York court's jurisdiction over his person. (*Bania v. Royal Lahaina Hotel* (1975), 37 Ill. App. 3d 661, 347 N.E.2d 106.) We therefore find that the New York Supreme Court had personal jurisdiction over defendant.

Defendant's next contention is that the New York Supreme Court lacked subject matter jurisdiction because the claim arose under the Federal securities laws and was therefore, under the holding of *Wilko v. Swan* (1953), 346 U.S. 427, 98 L. Ed. 168, 74 S. Ct. 182, not subject to arbitration. Plaintiff concedes that arbitration clauses contained in brokerage agreements are not enforceable with regard to claims arising under the Federal securities laws. Plaintiff asserts, however, that the judgment that he here seeks to enforce arose not under the Federal securities laws but from the arbitration of a State law contract claim and that under the authority of *Baselski v. Paine, Webber, Jackson & Curtis, Inc.* (N.D. Ill. 1981), 514 F. Supp. 535, such claims are properly arbitrable.

We must therefore decide whether the instant case is governed by *Wilko v. Swan* (1953), 346 U.S. 427, 98 L. Ed. 168, 74 S. Ct. 182, in which the Supreme Court held that predispute agreements to arbitrate claims arising under the Securities Act were void, or by *Baselski*, in which the Northern District of Illinois upheld a predispute arbitration

provision in a customer's agreement, almost identical to the instant provision, where the claims arose out of a State law and the parties had agreed that their contractual relationship would be governed by the law of New York.

The distinction to be made is a factual one. After a careful and complete review of the record before us, we necessarily find that the record on appeal is insufficient to enable us to make this distinction. The only evidence we have culled from the record which might generously be construed as factual is as follows:

Defendant, in his answer, states that misrepresentations were made to him by his broker to induce him to enter into an order for a security transaction and that the contract was not enforceable under the Illinois Statute of Frauds. (Ill. Rev. Stat. 1981, ch. 26, par. 8—319.) In his amended answer, defendant states that the dispute grew out of the December 18, 1978, transaction which occurred when:

> "*** defendant received false and incomplete information from plaintiff's Chicago office on the purported investment limit price for a short sale of a security. *** Defendant states that elements of fraud were involved in the transaction on December 18, 1978; that at the same time that defendant was induced to enter this short sale, plaintiff's New York office was readying its buy recommendation on the same security which became public three days later."

In a letter from defendant to the operations manager at Paine Webber, defendant states that the December 18 short sale order was "obtained through misrepresenting the investment stop figures for Datapoint appearing in the Peroni Opinion report dated December 14." And, finally, in the report of the proceedings from the July 18, 1983, hearing on defendant's motion to stay the sale of his home, defendant states "that the facts show that that claim was obtained through misrepresenting."

■■ ■ These sparse and scattered excerpts from the record most closely approach the status of "facts," and yet, in all fairness to plaintiff, these statements more closely resemble accusations or bare allegations than they do statements of fact. The "statement of facts" contained in defendant's appellate brief also fails to provide us with the information needed for a determination for, without adequate support in the record, the "statement of facts" lies outside the record and may not be considered on appeal. (*Abbey Plumbing & Heating, Inc. v. Brown* (1977), 47 Ill. App. 3d 719, 365 N.E.2d 115.) We are, therefore, required to assume that the evidence presented at trial was sufficient to support the judgment (*Belcher v. Spillman* (1975), 28 Ill. App. 3d 973, 329 N.E.2d 550), and that the court rendered the judgment upon

a State law rather than a Federal securities law claim.

Defendant has therefore failed to rebut the presumption of the jurisdiction of the court rendering the foreign judgment. In addition, there is another presumption operating here. It is presumed that the arbitrator did not exceed his authority. (*American Invsco Realty, Inc. v. Century 21* (1981), 96 Ill. App. 3d 56, 420 N.E.2d 692.) All reasonable presumptions are indulged in favor of the arbitration award (*Wilcox Co. v. Bouramas* (1979), 73 Ill. App. 3d 1046, 392 N.E.2d 198), and a court must construe an arbitration award, whenever possible, to uphold its validity. *Board of Education v. Chicago Teachers Union, Local No. 1* (1981), 86 Ill. 2d 469, 427 N.E.2d 1199.

The New York Supreme Court could not have properly exercised jurisdiction to confirm the arbitration award nor could the arbitrator have acted within the scope of its authority had those bodies not construed the claim upon which the award was made as arising out of State law. Defendant never made a special appearance to protest jurisdiction, nor moved to stay the arbitration proceedings, nor moved to vacate the arbitration award by asserting a claim arising under the Federal securities laws. Defendant has, in fact, never asserted any claim; he has only defended against the claim brought by plaintiff for breach of the margin agreement.

■ Plaintiff asserts that its claim arises from defendant's failure to meet Regulation T requirements covering the short sale of certain securities. Such claims for breach of a margin contract and violations of Regulation T, dealing with margin requirements and withdrawal of funds from a margin account, are properly arbitrable. (*Macchiavelli v. Shearson, Hammill & Co.* (E.D. Cal. 1974), 384 F. Supp. 21.) So, too, are claims of breach of fiduciary duty and the tort of misrepresentation. (*Baselski v. Paine, Webber, Jackson & Curtis, Inc.* (N.D. Ill. 1981), 514 F. Supp. 535.) The arbitration board, the New York Supreme Court, and the circuit court of Cook County must necessarily have found that the instant action arose from one of these properly arbitrable State law claims. We will not reverse their findings on the speculation and conjecture to which we are limited by an incomplete record. *Teitelbaum v. Reliable Welding Co.* (1982), 106 Ill. App. 3d 651, 435 N.E.2d 852.

■ Defendant's final contention on appeal is that he was denied due process because (1) the summons served upon him was not accompanied by a complaint and (2) certain documents were not offered into evidence by plaintiffs. As pointed out by plaintiffs, the record discloses that defendant was properly served with a summons and a copy of the petition for registration of the foreign judgment. This is proper under

the Uniform Enforcement of Foreign Judgments Act. (Ill. Rev. Stat. 1981, ch. 110, par. 12—604.) There was no complaint in the instant action which was based on plaintiffs' petition for registration. The petition requesting the court to register the foreign judgment specifically sets forth all facts and circumstances necessary to afford defendant due process.

Finally, defendant claims that plaintiffs violated Supreme Court Rule 282 by not attaching a number of documents to the summons and petition. (73 Ill. 2d R. 282.) Rule 282 governs the commencement of an action on a small claim and provides that if the claim is based upon a written instrument, a copy thereof must be attached to the complaint. This is not, however, the commencement of an action on a small claim, but rather a petition to register a foreign judgment governed by the Uniform Enforcement of Foreign Judgments Act and the procedures thereunder. The "claim" here is based on the petition, not on the collection of evidentiary documents defendant lists in his brief. As noted in the order entered on February 1, 1984, these documents were found by the court never to have been submitted or offered as evidence to the trial court or made a part of any pleading or filing submitted to the trial court for its consideration. Consequently, these documents were stricken from the record on appeal. Defendant appears to feel it was plaintiffs' duty to enter these documents into evidence. It was defendant, however, who had to offer evidentiary support for his opposition to plaintiffs' petition, for it is he who had to rebut the presumed validity of both the arbitration award and of the foreign court judgment plaintiffs sought to register. For these reasons, we find that defendant has suffered no denial of due process.

Accordingly, we affirm the decision of the trial court granting plaintiffs' petition to register the foreign judgment in the sum of $1,790.63 with interest thereon from January 28, 1980, and costs of the proceedings.

Affirmed.

JIGANTI and ROMITI, JJ., concur.